1 | IRELL & MANELLA LLP
Morgan Chu (70446) (mchu@irell.com)
2 | Jonathan S. Kagan (166039) (jkagan@irell.com)
1800 Avenue of the Stars, Suite 900
3 | Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
4 | Facsimile:  (310) 203-7199

5 | David C. McPhie (231520) (dmcphie@irell.com)
Matthew J. Carden (254421) (mcarden@irell.com)
6 | 840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
7 | Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200
8 |
Attorneys for Plaintiff
9 | Juniper Networks, Inc.

10 |

11 | **UNITED STATES DISTRICT COURT**

12 | **NORTHERN DISTRICT OF CALIFORNIA**

13 |

14 | JUNIPER NETWORKS, INC., a Delaware corporation,

15 |                    Plaintiff,

16 |           vs.

17 | PETER M. SHIPLEY, an individual,

18 |                    Defendant.

19 |

| | |
|---|---|
| JUNIPER NETWORKS, INC., a Delaware corporation, | ) Case No. C09-00696-SBA |
| Plaintiff, | ) |
| vs. | ) Date:        July 28, 2009 |
| | ) Time:        1:00 p.m. |
| | ) Courtroom:  3 (Oakland) |
| PETER M. SHIPLEY, an individual, | ) Judge:      Hon. Saundra B. Armstrong |
| Defendant. | ) |

20 |

21 |

22 |

23 | **PLAINTIFF JUNIPER NETWORKS, INC.'S OPPOSITION TO**

24 | **DEFENDANT PETER M. SHIPLEY'S MOTION TO DISMISS**

25 |

26 |

27 |

28 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# TABLE OF CONTENTS

**Page**

I. Introduction ........................................................................................................................ 1

II. Background ........................................................................................................................ 2

III. Legal Standard ................................................................................................................. 4

IV. Juniper's Complaint Adequately Alleges a Patent Mismarking Claim ......................... 5

    A.    Shipley's Website Qualifies As An "Unpatented Article" For Purposes Of 35 U.S.C. § 292 ................................................................. 5

    B.    Juniper Has Adequately Pleaded That The Markings Falsely Import That Shipley's Website Is Patented ............................................................... 8

    C.    Juniper Has Pleaded Shipley's Intent To Deceive The Public In Painstaking Factual Detail ................................................................. 11

V. Juniper's Claim Is Not Barred by the Statute of Limitations ....................................... 14

    A.    The Equitable Estoppel Doctrine Applies To Juniper's Claims Because Shipley Fraudulently Concealed Information Crucial To These Claims ............................................................................................... 14

    B.    The Equitable Tolling Doctrine Applies To Juniper's Claims Because Juniper Had Neither The Means Nor The Reason To Investigate Shipley's Markings ................................................................. 16

    C.    Shipley Violated 35 U.S.C. § 292 Within The Statute Of Limitations ................. 18

VI. Conclusion ..................................................................................................................... 21

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1

## TABLE OF AUTHORITIES

2

Page(s)

3

Cases

4
*Akamai Techs. v. Limelight Networks, Inc.*,
   2008 U.S. Dist. LEXIS 18636 (D. Mass. 2008) .................................................................. 9

5
*American Medical Sys. v. Medical Eng'g Corp.*,
   6 F.3d 1523 (Fed. Cir. 1993) ............................................................................................ 9

6

7
*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................... 11, 14

8
*Clontech Labs., Inc. v. Invitrogen Corp.*,
   406 F.3d 1347 (Fed. Cir. 2005) .................................................................................... 8, 13

9

10
*Decker v. GlenFed, Inc.*,
   42 F.3d 1541 (9th Cir. 1994) ........................................................................................... 12

11
*Eolas Techs., Inc. v. Microsoft Corp.*,
   399 F.3d 1325 (Fed. Circ. 2005) ....................................................................................... 9

12

13
*Erickson v. Pardus*,
   127 S. Ct. 2197 (2007) ...................................................................................................... 5

14
*Forest Group, Inc. v. Bon Tool Co.*,
   2008 WL 2962206 (S.D. Tex. July 29, 2008) ........................................................... 5, 8, 21

15

16
*IMX, Inc. v. LendingTree, LLC*,
   79 U.S.P.Q.2d 1373 (D. Del. 2005) ........................................................................ 6, 10, 11

17
*In re Thomsen v. Galt*,
   1999 U.S. App. LEXIS 4539 (9th Cir. 1999) .................................................................... 15

18

19
*Jama v. Immigration & Customs Enforcement*,
   543 U.S. 335 (2005) .......................................................................................................... 7

20
*Mass. Int. of Tech. v. Abacus Software, Inc.*,
   2004 U.S. Dist. LEXIS 30052 (E.D. Tex. 2004) .......................................................... 7, 20

21

22
*Meyer v. Rodex Sales & Serv., LLC*,
   2006 U.S. Dist. LEXIS 84451 (D. Idaho Nov. 16, 2006) ................................................... 7

23
*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ........................................................................................... 12

24

25
*Oja v U.S. Army Corps of Engineers*,
   440 F.3d 1122 (9th Circ. 2006) ................................................................................... 19, 20

26
*Pagtalunan v. Reunion Mortgage Inc.*,
   2009 WL 961995 (N.D. Cal. April 8, 2009) ...................................................................... 5

27

28
*Soverain Software L.L.C. v. Amazon.com, Inc.*,
   383 F. Supp. 2d 904 (E.D. Tex. 2005) ........................................................................... 6, 9

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- ii -

*United States Gypsum Co. v. Pacific Award Metals, Inc.*,
  438 F. Supp. 2d 1101 (N.D. Cal. 2006) ............................................................... 8

*Western Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ................................................................................ 5

**Statutes**

35 U.S.C. § 271 ...................................................................................................... 9

35 U.S.C. § 287(a) ............................................................................................. 7, 11

35 U.S.C. § 292 ............................................................................................. passim

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 5

Fed. R. Civ. P. 8(a)(2) .......................................................................................... 4

Fed. R. Civ. P. 9(b) ............................................................................................. 12

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

# I.

## INTRODUCTION

Defendant Peter M. Shipley ("Shipley") maintains a website to sell email and web hosting accounts to customers, and to promote and market his services as a computer "hacker." Shipley originally claimed that his website used a "patent pending" component developed by Shipley (the "Dynamic Firewall") and configured his system to create distinct web pages marked with this claim on the computers of visitors to his website. Shipley later embellished his claim by identifying the two specific United States patents that Shipley claimed were being used on his website in his "Dynamic Firewall." Shipley's website generates these claims about the "Dynamic Firewall" and its alleged patented technology every time a visitor to Shipley's accesses the relevant web pages. While Shipley has periodically modified the patent claims he makes on his website (for example, by correcting other language for the creation of pages with the patent marking in 2004), his website continues to generate the patent-related representations about his "Dynamic Firewall" to this day.

Each of Mr. Shipley's statements about the use of the "Dynamic Firewall" and its alleged patented technology are false. Mr. Shipley has conceded that the "Dynamic Firewall" product that he claimed was "functioning" on his website was in fact destroyed in 1999. Mr. Shipley did not correct his website to reflect this fact. To the contrary, instead of disabling his website from generating the (now false) "patent pending" markings, Shipley changed his website so it would now generate markings identifying the specific patent numbers that were allegedly being used on the website roughly one year *after* his "Dynamic Firewall" component had been destroyed. Shipley does not dispute that the hardware and software he has used on his website since 1999 is *not* protected by the patents with which he has marked his website. Incredibly, although Shipley has continued to make updates to his website (including within the last five years), each update has configured the web site to generate web pages misrepresenting the website software as patented.

To this day, Shipley's website provides no disclosure to his customers and other visitors to his website that Shipley's patented technology is no longer "functioning" to protect the site. Even

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

as an employee of OneSecure (a corporate predecessor of Plaintiff Juniper Networks, Inc. ("Juniper") that developed its own network security software), Shipley never disclosed that the patent markings generated by his website were false—despite his agreements with OneSecure that (1) required Shipley to disclose information pertaining to his inventions, and (2) released OneSecure from any claims based on the very patents included in the false markings generated by his website.

Consequently, it was not until late 2008 that Juniper learned that Shipley's claims to be using his patented "Dynamic Firewall" were false. Specifically, on October 23, 2008, Shipley conceded that his "Dynamic Firewall" had been destroyed in 1999, and that he had no other operational versions of this software. Less than four months after learning that Shipley's website was not using (and had not been using) Shipley's allegedly patented technology, Juniper filed a complaint for false patent marking under 35 U.S.C. § 292. On May 19, 2009, Juniper filed an Amended Complaint in response to this Court's order granting Juniper leave to provide additional factual information regarding its claims against Shipley.

Shipley now argues that Juniper's Amended Complaint should be summarily dismissed, apparently based on the view that software patents and small business owners ought to be exempt from the long-standing federal law prohibiting false patent marking. However, 35 U.S.C. § 292 contains no such exemptions. Juniper's Amended Complaint provides Shipley with more than adequate notice of the facts giving rise to its mismarking claims, which fall squarely within the activity prohibited by 35 U.S.C. § 292 (including false marking as well as false advertising). Moreover, as discussed below, Juniper's action is not barred by the statute of limitations as Shipley has indisputably committed one or more violations within the limitations period. As a result, the Court should deny Shipley's Motion to Dismiss ("Motion").

## II.

### BACKGROUND

Juniper is a leading designer, developer, manufacturer, and seller of computer network products, including products relating to network "firewalls." Amended Complaint ¶ 8. Shipley is a self-proclaimed computer "hacker" who promotes his services and products on a website located

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 2 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

at <http://www.dis.org> ("Website").  *Id.* ¶ 9.  Shipley started maintaining the Website from his home no later than 1995.  *Id.* ¶ 12.  Shipley sells paid email and web hosting accounts to customers on the Website.  *Id.* ¶ 11.  Once Shipley started his Website, his fellow hackers began trying to "hack" into the site.  Shipley then attempted to develop a product to stop or deter hacker attacks.  *Id.* ¶ 14.

In 1995 and 1996, Shipley claims to have conceived and developed a technology known as a "Dynamic Firewall."  *Id.* ¶ 15.  Shipley used the "Dynamic Firewall" as a component of his Website, and it was purportedly operational in Shipley's home beginning in 1996.  *Id.* ¶ 17.  This technology was supposedly claimed as an invention in a series of patent applications filed on behalf of Shipley before the United States Patent and Trademark Office ("PTO").  *Id.*  As a result of these applications, Shipley was issued two patents—U.S. Patent Nos. 6,119,236 and 6,304,975.  *Id.* ¶¶ 31, 37.

On November 2, 2007, a company called "Enhanced Security Research LLC" ("ESR") sued Juniper for infringement of the two Shipley patents in the Eastern District of Texas.  Juniper learned that Shipley is an owner and manager of ESR, and that the company's sole apparent purpose is to sue companies for patent infringement.  Declaration of Matthew J. Carden ("Carden Decl.") Ex. 1 (Texas SOS Record for ESR).  As this lawsuit progressed, the parties engaged in certain limited discovery, including written interrogatories, document productions, and depositions.  During the course of this discovery, Juniper learned that Shipley has configured his Website to generate statements that Shipley's patented "Dynamic Firewall" was purportedly "functioning" on his Website, and that this "Dynamic Firewall" used the technology from the Shipley patents.  Amended Complaint ¶¶ 18, 32, 38.  Accordingly, Juniper requested information from Shipley about this embodiment of the patents-in-suit via an interrogatory.  In response, Shipley conceded, for the first time, that his "Dynamic Firewall" had been destroyed in a hard drive crash that occurred in 1999.  Carden Decl. Ex. 2 (ESR Response to Interrogatory No. 9 (October 23, 2008)).  Following Shipley's admission that the allegedly patented "Dynamic Firewall" was no longer functioning on his Website, Juniper took Mr. Shipley's deposition to confirm that he had not been using his patented technology on his Website since this 1999 crash,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 3 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

1    despite his post-1999 changes to his Website that specifically identified two patents that his
2    Website was purportedly using.

3        On February 17, 2009, less than four months after Shipley's interrogatory response, Juniper
4    Juniper filed a complaint ("Original Complaint") for false patent marking under 35 U.S.C. § 292.
5    The Original Complaint was dismissed without prejudice by this Court in its Order Granting
6    Defendant's Motion to Dismiss of May 14, 2009 ("Order"), for failure to state a claim upon which
7    relief can be granted.  On May 19, 2009, Juniper filed an Amended Complaint ("Amended
8    Complaint").

9        In its Amended Complaint, Juniper alleges that in 2000 and 2001—roughly a year after the
10   only embodiment of his patents had been destroyed, and despite his knowledge that the "Dynamic
11   Firewall" for which his patent was pending no longer existed—Shipley intentionally reconfigured
12   the Website to create web pages indicating that his "Dynamic Firewall" software (allegedly
13   described by "Patent # 6,119,236" and "Patent # 6,119,236 and 6,304,975") was "functioning" on
14   his Website.  Amended Complaint ¶¶ 32, 38.  The Website continues to this day to generate web
15   pages containing these patent markings, including (by Juniper's estimate) thousands of distinct
16   markings since 2004 alone.  *Id.* ¶ 44.  Since 2004, Shipley has also continued to reconfigure the
17   Website, and each reconfiguration has included instructions to generate these patent markings.
18   Exhibits 3-4.[1]  Juniper alleges (and Shipley has not disputed) that Shipley knew that these
19   markings were false at the time he made them.  *Id.* ¶¶ 34, 40.  Shipley continues to falsely mark
20   his Website to this date.  *Id.* ¶¶ 43-46.

21                                           **III.**

22                                    **LEGAL STANDARD**

23       To prevail on his motion to dismiss for failure to state a claim, Shipley must show that
24   Juniper's Complaint does not satisfy the minimal notice pleading requirements of Rule 8 of the
25   Federal Rules of Civil Procedure.  Rule 8 requires only that a plaintiff include a "short and plain
26   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).
27   Indeed, "[s]pecific facts are unnecessary—the statement need only give the defendant 'fair notice

28   _____
     [1] This is discussed more fully in Section V.C below.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 4 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

1  of the claim and the grounds upon which it rests.'"  *Pagtalunan v. Reunion Mortgage Inc.*, 2009

2  WL 961995 at *2 (N.D. Cal. April 8, 2009) (citing *Erickson v. Pardus*, 127 S. Ct. 2197, 2200

3  (2007)).  In considering a motion to dismiss, the Court must accept all factual allegations

4  contained in the complaint as true.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

5  1981).

6                                                      **IV.**

7                **JUNIPER'S COMPLAINT ADEQUATELY ALLEGES A PATENT MISMARKING CLAIM**

8         A violation of 35 U.S.C. § 292 is shown by simply pleading (1) the marking of an

9  unpatented article and (2) intent to deceive the public.  *Forest Group, Inc. v. Bon Tool Co.,* 2008

10  WL 2962206 at *3 (S.D. Tex. July 29, 2008).  Juniper has adequately pleaded these elements.

11  Shipley nevertheless argues Juniper's claim should be dismissed pursuant to Rule 12(b)(6) of the

12  Federal Rules of Civil Procedure for failure to state a cause of action, based on three major

13  arguments: (1) that Shipley's Website could not be the "unpatented article" of § 292 because it is

14  not a "commercial product"; (2) that the markings of Shipley's Website identified by Juniper are

15  merely "a brief, informal description" of Shipley's invention lacking a "sufficient nexus" to any

16  commercial product; and finally (3) that Juniper has failed to plead intent to deceive the public

17  with the requisite specificity.  Each of these arguments fails, as shown below.

18      **A.    Shipley's Website Qualifies As An "Unpatented Article" For Purposes Of 35**

19             **U.S.C. § 292**

20         In this Court's Order dismissing Juniper's original complaint, it construed 35 U.S.C. § 292

21  as requiring "the advertising of [a] product."  Order at 5.  Shipley has restated this as "the

22  advertising of an unpatented commercial product."  Motion at 4.

23         Juniper has pleaded additional facts in its Amended Complaint to show Shipley's Website

24  was, in fact, a commercial product.  For example, Juniper notes that accounts including "email"

25  and "web hosting" services were advertised and available on his Website, with monthly fees

26  ranging from $5 to $150.  Amended Complaint ¶ 11.  The purported existence of a "functioning"

27  embodiment of the patented technology on the Website further served as a "proof of concept" in

28  connection with Shipley's commercial consulting services on network security topics.  *Id.* ¶ 24.  It

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 5 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

is sufficient that commercial services be dispensed from or facilitated by a website to render it a commercial product; neither the website *itself* nor any particular technical components thereof need be for sale (which indeed in this context would imply its owner was seeking to leave the business.  *See, e.g., Soverain Software L.L.C. v. Amazon.com, Inc.*, 383 F. Supp. 2d 904, 909 (E.D. Tex. 2005) (website to be marked facilitated the sale of retail goods, not sale of the website itself); *IMX, Inc. v. LendingTree, LLC*, 79 U.S.P.Q.2d 1373 (D. Del. 2005) at *4 (website facilitated the trading of mortgages).  Rather than arguing these additional facts do not render his Website a commercial product, Shipley ignores them entirely.

Moreover, Juniper respectfully maintains that 35 U.S.C. § 292 does not contain a requirement that the unpatented article be a "commercial product," or that there be any "advertising" thereof.  The pertinent portion of § 292 reads as follows:

> Whoever [1] marks upon, or [2] affixes to, or [3] uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public . . . Shall be fined not more than $500 for every such offense.

35 U.S.C. § 292.  This portion of the statute has three independent prongs, only the last of which ("uses in advertising") contains an "advertising" requirement.  Accordingly, this statute can be violated in three ways:

> (1) "Whoever marks upon . . . any unpatented article . . . the word 'patent'"; or
>
> (2) "Whoever . . . affixes to . . . any unpatented article . . . the word 'patent'"; or
>
> (3) "Whoever . . . uses in advertising in connection with any unpatented article, the word 'patent'."

*Id.*; *see also Meyer v. Rodex Sales & Serv., LLC*, 2006 U.S. Dist. LEXIS 84451 at *18 (D. Idaho Nov. 16, 2006) (violation shown under § 292 if patent number falsely "affixed" *or* if "used in advertising").  The alternate reading, which would apply the advertising language ("in advertising in connection with any unpatented article") to the first two terms ("marks upon" and "affixes to") deprives those terms of a plausible object for their preposition, *e.g.*, "Whoever marks upon . . . (in

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 6 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

1  advertising in connection with any unpatented article), the word 'patent' . . . Shall be fined not

2  more than $500." *Id.*  (parentheses added).

3       Juniper's interpretation is further mandated by the maxim of statutory construction (as

4  explained by the United States Supreme Court) that "a limiting clause or phrase . . . should

5  ordinarily be read as modifying only the noun or phrase that it immediately follows." *Jama v.*

6  *Immigration & Customs Enforcement*, 543 U.S. 335, 343 (2005) (internal citation omitted).  This

7  controlling maxim requires that the limiting phrase "in advertising" be read as modifying "***only***

8  the . . . phrase that it immediately follows" (*i.e.*, the word "uses") and not the words "marks upon"

9  or "affixes." *Id.* (emphasis added).

10      Moreover, even if the "advertising" prong is read as implying the related sale of a

11  commercial product, nothing in § 292 suggests a "commercial ***product***" is a necessary element of

12  the other two prongs.  Indeed, imposing such a requirement would create a gap in the ability of 35

13  U.S.C. § 292 to police the accuracy of markings made under related statute, 35 U.S.C. § 287(a).

14  For example, § 287(a) requires marking on articles that are ***made***, as opposed to just those that are

15  sold:  "Patentees, and persons ***making***, offering for sale, ***or selling*** . . . any patented article . . .

16  may give notice to the public that the same is patented . . . by fixing thereon the word 'patent'

17  . . . ."  35 U.S.C. § 287(a) (emphasis added).  *See generally Mass. Int. of Tech. v. Abacus Software,*

18  *Inc.*, 2004 U.S. Dist. LEXIS 30052 at *65 (E.D. Tex. 2004)  (discussing the "balance struck by §§

19  287(a) and 292").

20      Thus, Shipley's interpretation of this portion of 35 U.S.C. § 292 (as requiring the

21  advertising of a commercial product) cannot be reconciled with the text of the statute, controlling

22  Supreme Court precedent, or the statute's relationship to 35 U.S.C. § 287(a).  Unsurprisingly,

23  when courts list the elements of the offense, they generally omit any mention of a "commercial

24  product."  *See, e.g.*, *Forest Group, Inc. v. Bon Tool Co.,* 2008 WL 2962206 at *3 (S.D. Tex.

25  July 29, 2008) ("The two elements of a § 292 false marking claim are (1) marking an unpatented

26  article and (2) intent to deceive the public."); *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d

27  1347, 1351 (Fed. Cir. 2005) (quoting district court's interpretation of § 292: "(1) a marking

28  importing that an object is patented (2) falsely affixed to (3) an unpatented article (4) with intent to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 7 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

1   deceive the public"); *United States Gypsum Co. v. Pacific Award Metals, Inc.*, 438 F. Supp. 2d

2   1101, 1105 (N.D. Cal. 2006) (identifying same elements).

3       Juniper has therefore properly alleged Shipley's Website is the "unpatented article" that

4   patent language has been falsely marked or affixed upon for purposes of 35 U.S.C. § 292,

5   regardless of whether or not it is a commercial product.  Nevertheless, to the extent the statute is

6   understood to include a "commerce" requirement, Juniper's amended pleadings regarding the

7   commercial nature of the Website satisfy that requirement as well.

8       **B.      Juniper Has Adequately Pleaded That The Markings Falsely Import That**

9               **Shipley's Website Is Patented**

10      It is undisputed that the markings created by Shipley's Website are false, because the

11  embodiment of the invention previously "functioning" on the Website had been destroyed in 1999.

12  Amended Complaint ¶¶ 28, 32-34, 38-40.  Shipley, however, attempts to avoid this simple truth by

13  arguing that it is allegedly impossible to find a nexus between the markings and any *commercial*

14  *product*.[2]  Shipley also argues the markings are merely "brief, informal descriptions of Mr.

15  Shipley's patented invention" which by their nature refer to *no* embodiment, commercial product

16  or otherwise.  *Cf.* Amended Complaint ¶ 19 ("Mr. Shipley did not mark these web pages solely for

17  informational purposes as an informal or humorous description of his purported invention. Rather,

18  the markings were made for a number of advertising and commercial purposes.").  Juniper has,

19  however, pleaded facts which are impossible to reconcile with Shipley's conclusory

20  characterization of the markings as referring to no specific embodiment, and has also alleged facts

21  which show a tight nexus between the markings and the unpatented article which is Shipley's

22  website.

23      As an initial matter, for purposes of the Patent Act's provisions regarding marking (and

24  false marking), it is certainly possible to mark a website containing a patented software

25  component.  Websites are tangible articles comprised of hardware and software components (*see*

26

27  ───────────────
        [2] *See, e.g.*, Motion at 5 ("Juniper's claim still appears to be improperly premised on the
28  allegation that some item operating behind the scenes on the website—but not any product for sale
    and advertised to the public—was unpatented and falsely marked.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Amended Complaint ¶ 13), and their software components do not somehow place them outside the scope of U.S. patent law.  *See Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1338 (Fed. Circ. 2005) (software considered a "component of a patented invention" as required under 35 U.S.C. § 271).  For purposes of § 287(a), "to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so."  *American Medical Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1538-1539 (Fed. Cir. 1993).  Following *American Medical*, the court in *Soverain Software L.L.C. v. Amazon.com, Inc*., 383 F. Supp. 2d 904 (E.D. Tex. 2005) explicitly rejected the argument that "a website is an intangible object that cannot be marked," and cited "evidence that a website can be marked" including "screen shots of websites that include patent notices."  *Id.* at 909.  Similarly here, Shipley's Website purportedly contained a patented software component, and indeed, one similar to that in *Soverain*.[3]  *See also Akamai Techs. v. Limelight Networks, Inc.*, 2008 U.S. Dist. LEXIS 18636 (D. Mass. 2008) (noting that "[t]o the extent that" tools for "automatically modifying the HTML on the website" "comprise part of the apparatus" the patentee is "required by the statute to mark them").

Shipley argues the markings are merely a "brief, informal description" of his invention akin to "list[ing] his patents on his resume," and could therefore not identify the specific embodiment of the "Dynamic Firewall" functioning on his Website, and that they are "just part of a list of projects" which "in no way advertise a specific product or import that patented products are for sale."  Motion at 4-7.  But Shipley clearly went far beyond simply stating that he was the named inventor on a pair of particular patents; Shipley affirmatively (and untruthfully) stated that his patented technology was "functioning" on the very Website that he had programmed to transmit those false statements.  Shipley's customers and other visitors to his Website continue to receive these false markings generated by Shipley's Website—for Shipley's commercial gain.  *See, e.g.*, Amended Complaint ¶ 42.

---

[3] Shipley's marking described a "LAN [local area network] auto-defense and offense monitor/tool."  Amended Complaint ¶¶ 32, 38.  In *Soverain*, one of the patented components that should have resulted in a marking of the website included an embodiment of "methods for controlling and monitoring access to network servers."  383 F. Supp. 2d at 906.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 9 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

Moreover, Shipley's characterization of the markings is impossible to reconcile with the facts pleaded by Juniper.  On or before December 10, 1997, Shipley's marking stated that the "Status" of his "Patent Pending" "Dynamic Firewall" was "basic log file monitoring funtioning [*sic*], now implementing core rulesets."  Amended Complaint ¶ 18.  By December 3, 2000, Shipley had updated his marking to show that the "Status" of his now patented "Dynamic Firewall" ("Patent # 6,119,236") was "functioning..."  *Id*. ¶ 32.  By October 29, 2001, Shipley had again updated his marking to name two patents ("Patent # 6,119,236 and 6,204,975"), with "Status" still described as "functioning..."  *Id*. ¶ 38.  This sequence of "Status" descriptions plainly refers to a specific *embodiment* of Shipley's invention; Shipley was still "implementing" this embodiment as of December 10, 1997 and it was completed (and fully "functioning") only later, by December 3, 2000.  *Id*. ¶¶ 18, 38.  This conclusion is reinforced by additional verbiage in the three markings cited above: all three also contain the phrase "Shields holding captain," which is understood as further communicating "the notion that a patented Dynamic Firewall was, in fact, currently operating to successfully repel hacker attacks on the Website."  *Id*. ¶¶ 32, 35, 38, 41.[4] Indeed, an embodiment of the invention *was* functioning on Shipley's Website to protect it from intruders until a hard disk crash in 1999.  *Id*. ¶¶ 17, 28.  Shipley chooses to simply ignore these facts, even though they must all be taken as true for purposes of his Motion.

Shipley also argues there is not a "sufficiently clear nexus" between the markings and the patented article, quoting *IMX, Inc. v. LendingTree, LLC*, 79 U.S.P.Q.2d 1373 (D. Del. 2005).  However, *IMX* differs from the situation here in several important respects which emphasize the tightness of the nexus between Shipley's markings and his Website.  In *IMX* the "website itself [was] not the patented invention," but was merely a place where users logged in to get permission to "access and run" the external patented software.  *Id*. at 1374-75.  Even then, however, the court stated that because the website was "intrinsic to" the external invention, a marking on the website could not only be sufficient to mark the external invention, but required to enjoy the benefits of

---

[4] In other words, the patent marking communicated the message, "If you are reading this, it is because the patented Dynamic Firewall has continued to successfully protect this website from a disabling hacker attack."

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1   the marking statute, 35 U.S.C. 287(a).  *Id.* at 1376.  However, a "sufficiently clear nexus" was

2   lacking in that case because the marking consisted only of a general "Patent Press Release"

3   identifying no specific embodiments of the patents, and it was positioned on one portion of the

4   website while the external software was accessed and run from a different portion of the website.

5   *Id.* at 1374-76.  Here, in contrast, there is a direct nexus between Shipley's Website and the

6   alleged patented technology because Shipley alleged that the Website itself embodied that

7   technology.  As a result, the analysis of *IMX* refutes Shipley's position here for at least three

8   reasons:  (1) Shipley's markings clearly refer to a specific embodiment (as shown above); (2) the

9   patented component is not external to Shipley's Website but a component of it; and (3) Shipley's

10  markings appear not on some different and unrelated portion of the Website, but on a page by

11  which the patented component is "access[ed] and run," in the sense that by its nature as a network

12  "monitor/tool," the "Dynamic Firewall" component would be accessed and run as each user

13  visited any page of Shipley's Website via the internet, including the page containing the markings.

14  *Id.* at 1374; Amended Complaint ¶¶ 32, 38.

15      This tight nexus with Shipley's Website, coupled with facts establishing the character of

16  the markings as referring to a specific embodiment, is more than sufficient to plead that these

17  markings import the "Dynamic Firewall" component of Shipley's Website is patented.

18      ## C.  Juniper Has Pleaded Shipley's Intent To Deceive The Public In Painstaking

19          Factual Detail

20      Notwithstanding the additional detailed allegations of the Amended Complaint, Shipley

21  continues to allege that Juniper has not adequately pleaded intent (although he now devotes little

22  attention to this argument).  *See* Motion at 9.  In addition to a passing reference to the heightened

23  pleading requirement of Rule 9(b), Shipley argues that Juniper's pleading of intent also fails to

24  satisfy the plausibility standard of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)—though his objection

25  appears to be primarily based on the insufficiency of the markings themselves,[5] a topic which has

26  already been addressed above in Section IV.B.

27

28      [5] Motion at 9 ("the website text identifying and describing the patents . . . is not of a nature
    that could deceive the public").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

- 11 -

1   While Juniper does not agree that § 292 is subject to Rule 9(b), it has amended its

2   complaint to more particularly plead facts as to Shipley's possible motivations and intent.  For

3   example, Juniper has amended its complaint to set forth Shipley's apparent desire to sell email and

4   web hosting accounts on his Website, by falsely importing that his Website contained a unique,

5   patented security feature.  Amended Complaint ¶¶ 11, 26.  Juniper has also pleaded facts

6   suggesting other motivations for the false markings, including Shipley's desire to promote his paid

7   consulting services, to improve his reputation in the hacker community, to deter hacker attacks on

8   his Website, and to enhance the perceived value of his invention with respect to investors and

9   business partners.  *Id*. ¶¶ 10, 20-27.

10   Even without these facts regarding motivation, however, Juniper has adequately pleaded

11   intent under the heightened pleading requirements of Rule 9(b).  Under Rule 9(b), "[t]he pleader

12   must state the time, place, and specific content of the false representations as well as the identities

13   of the parties to the misrepresentation."   *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir.

14   2007) (citation omitted).  However, "[w]hile the factual circumstances of the fraud itself must be

15   alleged with particularity, the state of mind – or scienter – of the defendants may be alleged

16   generally."  *Id*. at 554 (citing *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1547 (9th Cir. 1994)).  In this

17   case, the "factual circumstances of [Shipley's] fraud itself"—*i.e.*, identification of the false

18   markings and the where, who, what, and how they were made—are set forth in painstaking detail

19   in the Amended Complaint.  Amended Complaint ¶¶ 9-19, 21-23, 28-34, 37-40, 43-46.  Even if

20   Juniper's allegations regarding Shipley's state of mind are deemed to be have been alleged only

21   "generally," that is sufficient under Rule 9(b).  *Odom*, 486 F.3d at 554.

22   The Federal Circuit has provided two elements which are sufficient to prove intent under

23   § 292: "Intent to deceive, while subjective in nature, is established in law by objective criteria.

24   Thus, objective standards control and [1] the fact of misrepresentation coupled with [2] proof that

25   the party making it had knowledge of its falsity is enough to warrant drawing the inference that

26   there was a fraudulent intent."  *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352

27   (Fed. Cir. 2005) (internal quotations and citation omitted).

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 12 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

As required by Rule 9(b), Juniper has pleaded both of these elements of intent with particularity as to the factual circumstances surrounding each. First, Shipley made the misrepresentative markings. Amended Complaint ¶¶ 32, 33, 36, 38, 39, 42, 44. They were published on the Website he maintains at URL <http://www.dis.org>, on a web page marked "Maintained by Peter Shipley." Amended Complaint ¶¶ 9, 23, 32, 38. The precise content of the markings, their use of the word "patent" with specific patent numbers, and the manner in which they refer to a "Dynamic Firewall" component of Shipley's Website as a "functioning" embodiment of these patents have all been pleaded by Juniper, along with specific dates by which the markings were first made and (more importantly) the fact that multiple false markings have been made every day since February 7, 2004. Amended Complaint ¶ 32-35, 38-41, 44.

Second, Shipley had knowledge of the markings' falsity when he made them. Amended Complaint ¶¶ 34, 36, 40, 42. The "Dynamic Firewall" component of Shipley's Website had been permanently destroyed by a hard disk crash in 1999, well before Shipley first published either form of the false marking. Amended Complaint ¶¶ 28, 32, 38. While many false marking cases turn on a defendant's possible good faith belief that the article did, in fact, embody the patents numbers marked upon it, such good faith belief is impossible here since the embodiment had already been completely destroyed. *Cf. Clontech*, 406 F.3d at 1355 (finding defendant could have held an "honest good faith belief in marking its products" based on ambiguous experimental data).

Thus, Juniper has adequately pleaded intent under Rule 9(b). It has alleged the factual circumstances of the fraud itself in comprehensive detail, including the dates on which the markings were made, the URL of the website on which they appeared, their precise content, and the identity of their creator, Peter Shipley. Amended Complaint ¶¶ 9, 32, 38. Juniper has also alleged Shipley's state of mind with greater specificity, by pleading additional facts as to his likely motivation, including his desire to sell email and web hosting services on his Website, to promote his paid consulting services, and so on. Amended Complaint ¶¶ 10-11, 20-27. And finally, Juniper has alleged Shipley's state of mind generally, as permitted by Rule 9(b), by alleging Shipley knew the markings were false when he made them and that he did so with intent to deceive the public. Amended Complaint ¶¶ 34, 42, 72.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 13 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

1    This combination of comprehensive detail with respect to the factual circumstances of the

2    fraud and the additional pleading of facts with respect to Shipley's motivation together paint a

3    compelling picture of Shipley's false marking and intent, which is more than sufficient to satisfy

4    the plausibility standard of *Ashcroft* and the heightened pleading requirements of Rule 9(b).

5    **V.**

6    **JUNIPER'S CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS**

7    Finally, Shipley still attempts to escape liability for violating 35 U.S.C. § 292 by invoking a

8    statute of limitations defense, notwithstanding the numerous facts in Juniper's Amended

9    Complaint in specific response to the Court's order granting leave to amend.  Motion at 9-12.

10   Shipley's defense fails for at least three reasons: (1) Juniper's claims warrant equitable estoppel

11   because Shipley improperly concealed facts which would have revealed the violation to Juniper

12   directly or led Juniper to conduct an investigation; (2) Juniper's claims warrant equitable tolling

13   because Juniper never had the means or a reason to investigate the veracity of Shipley's markings;

14   and (3) Shipley has, in fact, violated § 292 during the last five years, even under the most narrow

15   interpretation of the statute.

16   **A.    The Equitable Estoppel Doctrine Applies To Juniper's Claims Because Shipley**

17   **Fraudulently Concealed Information Crucial To These Claims**

18   Juniper's Amended Complaint clearly pleads facts showing fraudulent concealment by

19   Shipley.  First, Shipley improperly concealed facts which would have directly revealed the

20   marking violation to Juniper.  Amended Complaint ¶ 58.  Shipley was employed by OneSecure, a

21   corporate predecessor of Juniper, from April 4, 2000 to January 18, 2001.  Amended Complaint ¶¶

22   47-48.  In connection with his employment, Shipley undertook a contractual obligation to disclose

23   information relating to his purported inventions.  *Id*. ¶ 50.  Notwithstanding this contractual

24   obligation, Shipley failed to disclose the fact that a 1999 hard disk crash had destroyed his only

25   embodiment of his Dynamic Firewall invention.  *Id*.  ¶¶ 47-51.  Shipley had already disclosed the

26   existence of his Website including its markings to his employer.  *Id*. ¶ 49.  Therefore, if Shipley

27   had not improperly concealed this information about the hard disk crash, Juniper would have

28   known the markings must be false and could have promptly brought suit.  *Id*. ¶¶ 49, 58.  Shipley's

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 14 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

failure to disclose the hard disk crash at the time he undertook a contractual obligation to disclose such information is an affirmative act of fraudulent concealment.  *See In re Thomsen v. Galt*, 1999 U.S. App. LEXIS 4539 at *4 (9th Cir. 1999) (noting "debtor's failure to list boat on schedules constituted both fraudulent concealment and false oath") (citation omitted).

Second, Shipley also improperly concealed facts which would have prompted further investigation by Juniper.  *Id.* ¶ 58.  While employed by OneSecure, Shipley knew OneSecure was pursuing research into intrusion detection products he believed to have relevance to his Dynamic Firewall invention, and made plans to sue his employer.  *Id.* ¶ 54.  Shipley improperly concealed this intention at the time of his termination from OneSecure, when he entered into a broad release agreement with OneSecure which was intended to be a final resolution of legal disputes between Shipley and OneSecure.  *Id.* ¶¶ 55-56.  Among the information he was required to disclose at this time (but did not) was his intention to sue OneSecure or its successor (Juniper).  *Id.*  Had Shipley not improperly concealed this intention, OneSecure or Juniper would have promptly sought to gather as much information as possible about Shipley's purported embodiment of the patents on his Website, because that information would bear directly on both the validity of the patents and Shipley's interpretation of them.  *Id.* ¶ 58.  Shipley's failure to disclose information he was required to disclose at the time of entering into this release agreement is a second affirmative act of fraudulent concealment.

Given their direct impact on Juniper's ability to recognize and pursue its claim (as outlined above), these affirmative acts of fraudulent concealment are more than sufficient to warrant equitable estoppel.  "Equitable estoppel . . . focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'"  *Lukovsky*, 535 F.3d at 1051 (internal citation omitted).

Although Shipley claims that he "did not fraudulently conceal the operative facts" regarding its patent mismarking (Motion at 10), he takes an unreasonably narrow view of what constitutes "operative facts" that appears to include only those facts necessary to create (and not correct) the ***false*** impression that the Dynamic Firewall was actually "functioning" as a component of Shipley's Website.  Amended Complaint ¶¶ 32, 38.  Conspicuously absent from these

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 15 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

1  "operative facts" is any public mention that the fact a 1999 hard disk crash had destroyed

2  Shipley's embodiment of the Dynamic Firewall, or the fact that Shipley intended to sue his

3  employer for patent infringement (notwithstanding—and in violation of—his release agreement).

4  *Id.* ¶¶ 32, 38, 54-58.  As discussed above, these facts fraudulently concealed by Shipley bore

5  crucially on Juniper's ability to timely bring this suit, and to that extent were undeniably

6  "operative."

7  Equitable estopped is therefore warranted, given Shipley's affirmative acts of fraudulent

8  concealment and Juniper's consequent inability to discover the truth about Shipley's markings

9  within the limitations period.

10  **B.      The Equitable Tolling Doctrine Applies To Juniper's Claims Because Juniper**

11  **Had Neither The Means Nor The Reason To Investigate Shipley's Markings**

12  Shipley's conduct and the circumstances of this case also warrant equitable tolling.

13  Equitable tolling "focuses on whether there was excusable delay by the plaintiff:  If a reasonable

14  plaintiff would not have know of the existence of a possible claim within the limitations period,

15  then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff

16  can gather what information he needs." *Lukovsky*, 535 F.3d at 1051 (internal quotation omitted).

17  Juniper has shown in its Amended Complaint that any delay in bringing this suit was

18  reasonable and excusable.  Juniper did not discover that the Dynamic Firewall component had

19  ceased functioning until October 2008, through the happenstance of discovery in another lawsuit.

20  Amended Complaint ¶ 65.  Thus, Juniper was not on notice of facts that would have prompted

21  investigation during the limitations period.  *Id.* ¶¶ 49-51, 65.  Neither Juniper nor the general

22  public had reason to doubt the veracity of Shipley's markings.  Shipley was associated with both

23  the patents themselves (as named inventor) and the article marked (the Website he maintained).

24  *Id.* ¶¶ 9, 32, 38.  Because enablement is a requirement of patent law, Shipley's claim to have

25  created an embodiment of his patents as the named inventor was initially credible on its face.

26  Given the nature of the Dynamic Firewall (which Shipley's markings describe as a

27  "firewall/packet filter designed to act as a LAN [local area network] . . . monitor/tool"), and the

28  continuing operation of the Website in the face of possible hacker attacks, there was no reason to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 16 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

suspect an embodiment of them had not actually been incorporated as a component into Shipley's networked Website. *Id.* ¶¶ 32, 38. And most importantly, there was certainly no reason to suspect the component had been destroyed by a 1999 hard disk crash in Shipley's home, or that an experienced "hacker" such as Mr. Shipley would not easily be able to restore the Dynamic Firewall via a backup copy under such circumstances. *Id.* ¶¶ 12, 28.

Juniper further lacked the means to discover the falsity of the markings, *i.e.*, whether the "Dynamic Firewall" component of Shipley's Website was in fact "functioning," as his patent markings claimed. *Id.* ¶ 32, 38. The Website was physically located in Shipley's home, not in some public place. *Id.* ¶¶ 12-13, 17. Shipley had configured the Website to prevent third parties from examining details regarding the software operating on his Website. *Id.* ¶ 59. Short of engaging in illegal "hacking" activities, the software operating behind the scenes on his Website was impervious to outside investigation. *Id.* ¶¶ 61-62.

Shipley's argument that Juniper could simply have asked Shipley if his Dynamic Firewall had been destroyed is ridiculous. As an initial matter, Juniper would have had no reason to ask this question of Shipley, and was on notice of no facts that would have even raised this as a possibility. *Id.* ¶¶ 32, 38. Even if Juniper had divined the need to ask this question, moreover, it would be odd to have expected candor given that (as Juniper has pleaded) Shipley intended to deceive the public and knew the markings were false from the moment he first published them. *Id.* ¶¶ 28, 32, 34, 38, 40. Moreover, Shipley's Website was a continuous target of attack, and consequently Shipley always considered information regarding the internal components of his Website to be sensitive information. *Id.* ¶¶ 14, 60. It is therefore highly unlikely he would ever have revealed to the public the failure of a component of his Dynamic Firewall, for fear of facilitating an attack. Accordingly, Shipley's suggestion that Juniper should have made a "phone call or letter to Mr. Shipley" is ludicrous and certainly not among the steps required of a "reasonable" plaintiff.

Equally disingenuous is Shipley's contention that Juniper should have "purchase[d] . . . an allegedly falsely marked product in order to compare it to the public patent claims." Motion at 11. This contention again ignores the facts as pleaded by Juniper, such as that Shipley "deliberately

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 17 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

configured the Website at all times so as to prevent third parties such as OneSecure or Juniper from examining details regarding software that may or may not have been operating on the Website (including the Dynamic Firewall)." Amended Complaint ¶ 59. Certainly neither Juniper nor any member of the public ever had the opportunity to review Shipley's source code or any other component of the Dynamic Firewall to compare it to the patent claims.

When Juniper first learned of facts suggesting the existence of a patent mismarking violation by Shipley, it immediately and diligently sought further information about Shipley's violation, including by pursuing additional formal discovery. *Id.* ¶ 65. Once Juniper confirmed the violation, it promptly brought suit. *Id.* ¶ 66. Because Juniper exercised reasonable diligence both prior to and after learning the relevant facts, Shipley's suggestions regarding other futile (or impossibile) steps Juniper may have taken are unavailing. Juniper's claims therefore warrant equitable tolling.

## C.  **Shipley Violated 35 U.S.C. § 292 Within The Statute Of Limitations**

Regardless of the applicability of the equitable tolling and equitable estoppel doctrines, Shipley has clearly violated § 292 within the limitation period. Juniper's Amended Complaint alleges numerous such violations in that "between February 17, 2004, and May 19, 2009, the Website has generated multiple false markings every day." Amended Complaint ¶ 44. Importantly, the Amended Complaint makes clear that these offenses do not consist of the repeated publication of a single mismarking, but rather constitute multiple, independent mismarkings: "Specifically, the Website was and is configured to cause the creation [of] a new web page or 'HTML file' on the computers of those who access the Website. In most cases, a new HTML file is created every time a customer or visitor accesses the Website." *Id.* ¶ 13. The Amended Complaint further explains that "Mr. Shipley reconfigured the Website with instructions to create, for each and every customer or other visitor to the Website, a web page marked with the" false marking language. *See, e.g., id.* ¶ 38. Thus, based on the presumptively true facts as pleaded by Juniper, each visit to the Website (including after 2004) creates a new mismarked web page (an HTML file) which constitutes a separate offense under § 292.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 18 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

1    In his previous briefing, Shipley relied upon *Oja*, 440 F.3d 1122 (9th Cir. 2006) regarding

2  treatment of Internet websites for claims under the Privacy Act of 1974.  *Oja* is inapposite here,

3  for at least two reasons.[6]

4    First, *Oja* held that the "single publication rule" which is applied to websites under the

5  "realm of defamation law" should be extended to websites under the Privacy Act, and that this was

6  especially "apt" because "both the Privacy Act and defamation law are driven by similar policy

7  concerns—personal integrity and reputational interests." *Id*. at 1130.  Such policy concerns are

8  absent from § 292.  The event of most significance under the Privacy Act is the moment of first

9  publication (as with defamation law); once the confidential information has been released, it may

10 be impossible to prevent its further dissemination.  Violations of § 292, on the other hand, impose

11 societal costs which smoothly increase over time; each new visitor to the website is misled to the

12 same extent during the limitations period, and beyond.

13    Second, the Privacy Act is generally violated by some "publication" of private information

14 to the masses, which by its public nature is easy to detect.  Thus, violations may be identified (and

15 timely brought) under the Privacy Act within the limitations period without difficulty.  In contrast,

16 violations of § 292 with respect to websites in particular may remain impossible for the public to

17 discover indefinitely, as will be discussed now in greater detail.

18    Often but not always, an article that is adequately marked under § 287 will also be

19 available for outright purchase by the public, who may carry it away and perform their own tests

20 upon it.  The veracity of the markings may then be readily investigated and confirmed, with any

21 inaccuracies addressed by § 292 within the limitations period.  When, however, a website has been

22 marked with a patent number that refers to some internal mechanism within the website that is

23 invisible to and untestable by the public, it is impossible for the veracity of the markings to be

24 confirmed by anyone but the website's owner, since the internal website mechanism is typically

25 closely guarded for security reasons (as is the case here with Shipley's Website).

26

27    [6] Juniper also notes that the pertinent issue in *Oja* was decided on summary judgment, and

28 appears to rely on technical facts regarding the operation of the website which differ from the
technical facts pleaded here.  *See, e.g.*, Amended Complaint ¶¶ 13, 43.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1    Thus, to extend the holding of *Oja* from the Privacy Act to 35 U.S.C. § 292 would in

2    practice create an exemption from § 292 for websites whose patented aspects are effectively

3    immune to public inspection.  The owner of such a website could knowingly publish a false

4    marking with virtually no chance the public will discover it within the statutory period, and a

5    maximum fine of $500 if they do.  If the violation survives the limitations period undetected (as is

6    highly likely), the statute of limitations becomes a license to continue displaying the false marking

7    indefinitely, so long as the owner *does not* alter or correct it.  While such a result might make

8    sense for manufacturers who lose control of an item once it is marked and sold, it is perverse

9    where the website owner could correct the false marking with nearly as much ease as altering a

10   sentence in a document on his computer.

11   Another absurd result of Shipley's argument for application of a single publication rule to

12   websites under § 292 is that it would destroy the "balance struck by §§ 287(a) and 292" for

13   websites with unverifiable markings.  *See generally Mass. Int. of Tech. v. Abacus Software, Inc.*,

14   2004 U.S. Dist. LEXIS 30052 (E.D. Tex. 2004).  Incentives for website owners would tilt

15   decisively toward publication of even dubious markings of internal mechanisms, because the

16   substantial benefits of marking under § 287(a) (constructive notice for infringement) would be

17   balanced against a nearly zero risk of liability under § 292 (a small chance of paying $500).  Thus,

18   Juniper submits that application of *Oja* to the facts of this case is inapposite, and that its claims for

19   the Shipley's generation of numerous mismarked web pages since 2004 should be allowed.

20   Finally, it is clear that even under the most narrow view of what constitutes an "offense"

21   under § 292, Shipley has performed at least one distinct act of marking which did occur within the

22   limitations period, between June 23 and July 2, 2004.  *See* Carden Decl., Exs. 3 and 4 (showing

23   the contents of the specific page of Shipley's Website containing the false markings, as of June 23

24   and July 2, 2004 respectively).  As can be seen by comparing Exhibits 3 and 4, Shipley

25   reconfigured the Website during this time period to change the text of the web pages generated by

26   the Website (*e.g.*, compare "These talk s--- about DoC" in Ex. 3 to "They talk s--- about DoC" in

27   Ex. 4).  Shipley's reconfiguration in 2004 includes the very text that is accused as a false marking

28   in Juniper's complaint.  *See* Ex. 5; Amended Complaint ¶ 38.  This distinct decision to program

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 20 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

the Website in 2004 with instructions to manufacture the mismarkings set forth in the Amended

Complaint constitutes an example of at least one specific offense under § 292, and one that is

indisputably within the limitations period even under the caselaw as characterized by Shipley.  *See*

*Forest Group. Inc. v. Bon Tool Co.*, 2008 U.S. Dist. LEXIS 57134 (S.D. Tex. July 29, 2008).

## VI.

### CONCLUSION

Shipley's Motion is unsupported by the facts or the law.  Juniper's Amended Complaint

adequately alleges each of the elements of a false marking claim.  Moreover, the facts alleged

show that Juniper's cause of action is not barred by the statute of limitations.  Accordingly,

Shipley's Motion should be denied.

Due to the nature and number of the issues presented in Shipley's Motion, Juniper

respectfully requests that oral argument be held.

Dated:  July 7, 2009                              IRELL & MANELLA LLP


                                                  By:  /S/ David C. McPhie
                                                  _____
                                                       David C. McPhie

                                                  Morgan Chu
                                                     (mchu@irell.com)
                                                  Jonathan S. Kagan
                                                     (jkagan@irell.com)
                                                  IRELL & MANELLA LLP
                                                  1800 Avenue of the Stars, Suite 900
                                                  Los Angeles, CA  09967
                                                  (310) 277-1010
                                                  (310) 203-7199 (facsimile)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 21 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David C. McPhie
  (dmcphie@irell.com)
Matthew Carden
  (mcarden@irell.com)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
(949) 760-0991
(949) 760-5200 (facsimile)

Attorneys for Plaintiff
JUNIPER NETWORKS, INC.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 22 -

JUNIPER NETWORKS, INC.'S OPP'N TO PETER M.
SHIPLEY'S MOTION TO DISMISS (Case No. C09-00696)