UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JUNIPER NETWORKS, a Delaware corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>PETER M. SHIPLEY, an individual,<br><br>    Defendant. | Case No: C 09-0696 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>Docket 26, 32 |

    Plaintiff Juniper Networks, Inc. (Juniper) filed the instant action against Defendant Peter Shipley (Shipley) alleging that he falsely "marked" his website as being patented, in violation of 28 U.S.C. § 292(a). The Court previously granted Shipley's motion to dismiss, but allowed Juniper leave to amend to file an amended complaint. The parties are presently before the Court on (1) Defendant's Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted and (2) the Administrative Motion of Amicus Curiae Public Patent Foundation, Inc. (PPFI) for Leave to File Brief in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss. Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby GRANTS the motion to dismiss and DENIES PPFI's motion for leave to submit an amicus brief. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

# I. BACKGROUND

## A. FACTUAL SUMMARY

### 1. The Allegedly "False" Markings on Shipley's Website

Juniper is a designer, developer, manufacturer and seller of computer networking products. Am. Compl. ¶ 8 [Docket 23]. Shipley is an alleged computer "hacker" who, since 1995, has maintained a website located at http://dis.org (Website), ostensibly for the hacker community. Id. ¶¶ 9-12. In 1995 and 1996, Shipley conceived and developed a software known as "Dynamic Firewall," which he used to "repel hacker attacks on the Website." Id. ¶¶ 15, 35, 41, 51. In or about December 10, 1997, Shipley provided information on his Website regarding Dynamic Firewall, along with a variety of other software and other projects. In particular, his Website included a webpage devoted to a listing of "Current Projects" then currently being developed by "people in the hacker scene" in the San Francisco/Berkeley Bay Area. Id. ¶ 18; Joly Decl. Ex. C (printout from www.dis.org/projects.html as of Dec. 21, 2007). Ten projects are listed by name, followed by a brief summary of the project and a specification of the status of each project's development. Id. The page displayed, in part, the following content:

**Current Projects**

Here is a list of current projects and research currently underway by people in the hacker scene in the San Francisco/Berkeley Bay Area and their friends. Most or all of these projects will be released to the public upon completion.

. . . .

If you have any questions about these please feel free to email the us. [sic]

**Wardial demographic paper** [Dover]

Collect and analyze the results of over a year of wardialing in the BayArea [sic]. . . . A side effect of the project is that I will be releasing a bunch of Unix programs for the processing of toneloc data files. (See a [sic] article in PCWeek for some of the early result information.
**Status**: Done results to be published soon.

> **Radio Burst Cannon** (RBC) [Sinster, Dover]
>> Not quite a HERF gun, but close. The RBC should be able to produce up to or less than one Megawatt for up to several milliseconds. More then [sic] enough to fry most computers from a minor distance. Version one will be a proof-of-concept device. Versions two and three will use higher energy and wave guides for a stronger and tighter energy bursts.
>> **Status**: Delayed due to narking from members of the cDc.
>
> **IR Conversion for QV-10** [Dover]
>> Mod'ing the Casio QV-10 Digital camera to be IR sensitive. The Casio QV-10 is a low end (read cheap) Digital camera, I have modified the camera to be more infrared sensitive thus enabling it to be used to take pictures in total or near darkness it a IR source.
>> **Status**: Done, write up coming soon.
>
> . . . .
>
> **Dynamic Firewall** [Dover] \*\*\* *Patent Pending* \*\*\*
>
>> "Shields holding captain …".
>> "D.IP.SHI.T" Dynamic IP SHield Technology A selfmodifying active firewall/packet filter designed to act as a LAN auto-defense and offense monitor/tool. This is an idea I came up with a few years ago.
>> **Status**: basic log file monitoring *funtioning* [sic], now implementing core rulesets

Id. at 1-2 (second italics added); Am. Compl. ¶ 18.

Though numerous projects are listed on the "Current Projects" webpage, Juniper focuses solely on the summary regarding Dynamic Firewall. Specifically, Juniper asserts that Shipley's reference to "\*\*\* *Patent Pending* \*\*\*" was an attempt to "mark" his Website for "advertising and commercial purposes," within the meaning of the Patent Act. Am. Compl. ¶ 19. In addition, Juniper asserts that the reference to "fun[c]tioning," which is used to describe the "Status" of the project, was intended to convey that Dynamic Firewall was "operational or functioning" *on the Website*. Id. ¶ 28. Though Juniper does not dispute that a patent application was indeed pending, it claims that as of 1999, Dynamic Firewall could no longer have been "operational or functioning on the Website" due to "a hard drive crash in a computer in Mr. Shipley's home [that] allegedly resulted in the destruction of the Dynamic Firewall." Id. Despite the loss of Dynamic Firewall, Juniper complains that Shipley continued to display the "Patent Pending" notation next to the reference to Dynamic Firewall. Id. ¶ 29.

On September 12, 2000, the U.S. Patent and Trademark Office (PTO) issued Patent No. 6,119,236 ('236 Patent) to Shipley for Dynamic Firewall. Id. ¶ 31. Thereafter, on or about December 3, 2000, Shipley allegedly modified the description of Dynamic Firewall on the Current Projects page to read:

> **Dynamic Firewall** [Dover] \*\*\* ***Patent # 6,119,236*** \*\*\*
>
> "Shields holding captain …".
> "D.IP.SHI.T" <u>D</u>ynamic <u>IP</u> <u>SH</u>ield <u>T</u>echnology A selfmodifying active firewall/packet filter designed to act as a LAN auto-defense and offense monitor/tool. This is an idea I came up with a few years ago.
> **Status**: *functioning* ….

Id. ¶ 32 (ellipses in original, second italics added); Joly Decl. Ex. B at 2. Thereafter, on October 16, 2001, the PTO issued Patent No. 6,304,975 ('975 Patent) to Shipley. Id. ¶ 37. On or about October 29, 2001, Shipley updated the description of Dynamic Firewall to reflect the second patent:

> **Dynamic Firewall** [Dover] \*\*\* ***Patent # 6,119,236 and 6,304,975*** \*\*\*
>
> "Shields holding captain …".
> "D.IP.SHI.T" <u>D</u>ynamic <u>IP</u> <u>SH</u>ield <u>T</u>echnology A selfmodifying active firewall/packet filter designed to act as a LAN auto-defense and offense monitor/tool. This is an idea I came up with a few years ago.
> **Status**: *functioning* ….

Id. ¶ 38 (ellipses in original, second italics added). Juniper alleges that the reference to "functioning" was intended to falsely convey that Dynamic Firewall was functioning "on the Website" when it, in fact, could not have been due to its destruction in 1999. Am. Compl. ¶¶ 33-34, 39-40. Juniper also claims that the statement "Shields holding captain" (an apparent reference to Star Trek) was intended to communicate that Dynamic Firewall was "currently operating to successfully repel hacker attacks on the Website." Id. ¶ 41.

### 2. Juniper's Awareness of the Allegedly False Marking

Although Shipley had publicly disclosed the existence of Dynamic Firewall since at least December 1997, Juniper claims that it did not become aware of his alleged false marking until it learned of information during discovery in a separate patent lawsuit involving Juniper and Shipley's company, Enhanced Security Research LLC (ESR). Am. Compl. ¶¶ 18, 65;

- 4 -

Carden Decl. Ex. 2 at 15.[1]  Juniper propounded an interrogatory requesting that ESR "[i]dentify all embodiments of any claims of the patents-in-suit created by Peter Shipley . . . (including without limitation the 'Dynamic Firewall Technology' or 'Dynamic Firewall' associated with website hosted at http://www.dis.org) . . . ."  Carden Decl. Ex. 2 at 15.  On October 23, 2008, ESR responded that, "The system was operational and secured in his house from 1996 until the time of its destruction by virtue of a hard drive crash in or around 1999."  Id.  Juniper claims that this was the first time it was placed on notice that Dynamic Firewall no longer existed and that the "marking" on Shipley's Website identifying Dynamic Firewall as being patented was false.  Am. Compl. ¶ 65.  Once it confirmed that "Shipley had violated the mismarking statute, Juniper promptly brought this lawsuit[.]"  Id. ¶ 66.

### B. PROCEDURAL HISTORY

On February 17, 2009, Juniper filed the instant action against Shipley, alleging a single claim for violation of 35 U.S.C. § 292.  In its original complaint, Juniper averred that Shipley falsely marked his website by suggesting that Dynamic Firewall was operational and the subject to two patents, notwithstanding that the software had been lost in the hard drive crash on Shipley's computer in 1999.

Shipley filed a motion to dismiss the complaint under Rule 12(b)(6).  On May 19, 2009, the Court granted the motion and dismissed on the ground that Plaintiff had failed to allege facts demonstrating that the "markings" (i.e., the references to the '236 and '975 Patents next to the word "Dynamic Firewall") were made in reference to a commercial purpose or advertising of an unpatented article.  As an alternative matter, the Court found that Plaintiff's claim was barred by the applicable five-year statute of limitations.  The Court thus dismissed the Complaint with leave to amend to allege conduct within the purview of the statute and to aver facts demonstrating conduct occurring within the limitations period and/or facts

---

[1] The Court takes judicial notice of the Texas proceeding, Enhanced Security Research LLC v. Juniper Networks, Inc., E.D. Tex., Case No. 2-07CV-481-TJW-CE, including the complaint filed in that action.  Fed.R.Civ.P. 201; Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1124 n.29 (9th Cir. 2002) (taking judicial notice of a complaint filed in another action).

demonstrating that equitable tolling or estoppel was applicable. In response to the Court's ruling, Plaintiff filed an Amended Complaint for False Patent Marking on May 19, 2009.

Shipley filed a motion to dismiss the amended complaint, pursuant to Rule 12(b)(6). Shortly after Juniper filed its opposition, non-party PPFI filed an Administrative Motion of Amicus Curiae Public Patent Foundation for Leave to File Brief in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss. Docket 32. Shipley opposes PPFI's motion on the ground that it is untimely and irrelevant. Following the close of briefing on the motion to dismiss, the Court ordered supplemental briefing concerning a standing argument that Shipley had raised for the first time in his reply brief. The motions before the Court have been been fully briefed and are now ripe for adjudication.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. A dismissal under this rule may be based on either the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). Generally, a court must accept the allegations of the complaint as true and construe them in the light most favorable to plaintiff. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S.Ct. at 1949-50. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (internal quotation marks omitted).

Although a court generally is confined to the pleadings on a motion to dismiss, "[a] court may, however, consider certain materials—documents attached to the complaint,

documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Under the "incorporation by reference" doctrine, the court may "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010); In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (noting that under the "incorporation by reference" doctrine, courts are permitted to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the . . . pleading."). Thus, a district court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).

## III. DISCUSSION

### A. MARKING PROVISIONS OF THE PATENT ACT

The Patent Act provides "a limited right to exclude others from making, using, or selling a claimed invention for a limited period of time . . . ." TransCore, LP v. Elec. Transaction Consultants Corp. 563 F.3d 1271, 1275 (Fed. Cir. 2009) (quoting Bloomer v. McQuewan, 55 U.S. (14 How.) 539, 548 (1852)); 35 U.S.C. § 154(a)(1). A patentee who obtains a patent from the PTO has the right to indicate on the product that it is subject to a patent. Specifically, the patentee "may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent . . . ." 35 U.S.C. § 287. Though marking is not mandatory, "a party that does not mark a patented article is not entitled to damages for infringement prior to actual notice" unless the "the patent is directed to a process or method." Crown Packaging Tech., Inc. v. Rexam Beverage Can Co., 559 F.3d 1308, 1316 (Fed. Cir. 2009) (holding that the marking requirement is inapplicable to process or method claims). "The purpose behind the marking

statute is to encourage the patentee to give notice to the public of the patent." Id. (internal quotations and citations omitted).

In contrast, the Patent Act prohibits the marking of an article as being patented or the subject of a pending patent application when the article is neither. Section 292 of Title 35, commonly referred to as the "false marking statute," provides:

> (a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; or
>
> Whoever *marks upon*, or *affixes to*, or *uses in advertising* in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented *for the purpose of deceiving the public*; or
>
> Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public—
>
> *Shall be fined not more than $500 for every such offense.*
>
> (b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. § 292(a) (italics added).

The provisions of section 292(a) may thus be summarized as setting forth three types of marking prohibitions: "(1) counterfeit marketing (i.e. use of a patent mark without the patent owner's permission); (2) false marking (i.e. use of a patent mark on an unpatented article); and (3) false patent pending marking (i.e. the use of 'patent applied for' or 'patent pending' when no patent application covering the article is in fact pending."). 7 Donald S. Chisum, Chisum on Patents § 20.03[7][c][vii] at 20-650 (2005). "The purpose of the [false marking] statute is to protect the public." Id.; accord Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, 1303-304

(Fed. Cir. 2009) (noting that "[a]cts of false marking deter innovation and stifle competition in the marketplace."). To further that purpose, section 292 contains a qui tam provision that allows a private party, known as a "relator," to bring suit on behalf of the United States. Id. "By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking." Id.

### B. STANDING TO ASSERT A FALSE MARKING CLAIM

The threshold question presented is whether Juniper has standing to pursue a false marking claim under 35 U.S.C. § 292. Generally, the standing under Article III requires the plaintiff to establish: "(1) *an injury in fact* (i.e., a concrete and particularized invasion of a legally protected interest); (2) *causation* (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) *redressability* (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." Sprint Commc'n Co., L.P. v. APCC Servs., Inc., --- U.S. ---, 128 S.Ct. 2531, 2535 (2008) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

Shipley argues that Juniper has failed to allege facts that it has suffered an injury in fact. However, in qui tam actions, the injury need not be suffered by the relator; injury in fact to the United States is sufficient. Vermont Agency of Natural Recs. v. U.S. ex rel. Stevens, 529 U.S. 765, 773-74 (2000). Such injury may take the form of "the injury to [the United States'] sovereignty arising from violation of its laws and the proprietary injury resulting from the alleged fraud." Id. at 765. A qui tam statute effects a "partial assignment" from the government to the qui tam relator, which thereby confers standing upon the relator to file suit. Id. at 773. In this case, Juniper expressly brings this suit "on behalf of the United States," based on Shipley's alleged violations of the 28 U.S.C. § 292. See Am. Compl. ¶ 1. This is sufficient under Vermont Agency to establish standing. See Woods v. Empire Health Choice, Inc., 574 F.3d 92, 97-98 (2d Cir. 2009) ("Qui tam plaintiffs, even if not personally injured by a defendant's conduct, possess constitutional standing to assert claims on behalf of the Government as its effective assignees.") (citing Vermont, 529 U.S. at 773-74).

**C. FAILURE TO STATE A CLAIM**

**1. Conduct Within the Purview of 35 U.S.C. § 292**

The parties dispute whether Juniper has alleged facts showing that Shipley engaged in conduct that falls within the purview of the false marking statute. As noted, the "false marking" provision of section 292 states: "Whoever [1] *marks* upon, or [2] *affixes* to, or [3] *uses in advertising* in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented *for the purpose of deceiving the public* . . . ¶ Shall be fined not more than $500 for every such offense." 35 U.S.C. § 292(a) (italics added). The Court previously dismissed Juniper's false marking claim, *inter alia,* on the ground that it had failed to allege facts demonstrating that the "markings" (i.e., the references to the '236 and '975 Patents) were made in connection with the advertising of an unpatented article. The Court concluded that "there must be a nexus between the defendant's marking, affixing or using of a patent *and* the advertising of the product," which Juniper had not alleged. Juniper Networks v. Shipley, 2009 WL 1381873 at *3 (N.D Cal., May 14, 2009).

Subsequent to the Court's issuance of its Order on Shipley's first motion to dismiss, the Federal Circuit rendered its decision in Forest Group, which held that the $500 civil fine under section 292 should be imposed each time an article is false marked. In Forest Group, the district court imposed a $500 fine against the defendant under section 292 based on its "single decision to mark its stilts after it knew the stilts did not meet all the claims of the '515 patent." 590 F.3d at 1300-301 (internal quotations marks omitted). The Federal Circuit held that the district court erred, finding that "the statute's plain language requires the penalty to be imposed on a per article basis." Id. at 1301. In reaching its decision, the court explained that the district court's limited interpretation of section 292 was contrary to the policy considerations underlying the statute. Id. at 1302. The court explained that mismarking an article inures to the public's detriment on multiple levels. Id. For example, false marking dissuades potential competitors from entering the market and deters scientific research because "when an inventor sees a mark," he or she may decide[] to forego continued research to avoid possible infringement." Id. at 1303. In addition, "[f]alse marking can also cause unnecessary

investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete." Id.

Although the Forest Group did not directly address the question presented here, which is whether liability under the statute is triggered only where the false marking is used in advertising, the Federal Circuit's rationale for its decision and its clarification with respect to the various policies underlying 35 U.S.C. § 292 persuades the Court to reconsider its previous construction of the statute. Forest Group makes clear that the wide ranging public policy considerations underlying the false marking statute militate in favor of not requiring the acts of marking or affixing to necessarily be in relation to advertising. For example, an article may be falsely marked as being patented and distributed to the public. Although the mark is affixed to the product, such mark is not being "used in advertising." Yet, the harm from the false marking still would result because a consumer could be deceived into believing that the product that he or she purchased is patented when it, in fact, is not. Thus, the Court concludes that section 292 may be violated by marking an unpatented article or affixing upon an unpatented article "the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public," even if such marking or affixing does not relate to advertising the article.

### 2. **Sufficiency of the Allegations**

The next issue presented is whether Juniper's amended allegations are sufficient to state a claim under 35 U.S.C. § 292, as interpreted by the Court above. To establish a claim for false marking under this statute, a plaintiff must show (1) a marking importing that the article is patented (2) falsely affixed to (3) an unpatented article (4) with the intent to deceive the public. See 35 U.S.C. § 292(a); Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005). Here, Juniper claims that the "unpatented article" is Shipley's Website. Though Juniper does not allege that Shipley marked the Website itself as being patented, it nonetheless asserts that Shipley indirectly marked the site by claiming that Dynamic Firewall was patented. Juniper avers that the marking of Dynamic Firewall can be imputed to the Website generally on

the ground that Shipley represented that Dynamic Firewall was "functioning" on the site when it could not have been due to the hard drive crash in 1999. Am. Compl. ¶¶ 33-34, 39-40.

Juniper's contention that Dynamic Firewall was "'functioning' on the Website" is spun from whole cloth. See Am. Compl. ¶ 34. The sole reference to "functioning" appears on one of the webpages entitled, "Current Projects." As set forth above, the Current Projects page purports to provide the viewer with "a list of current projects and research underway by people in the hacker scene in the San Francisco/Berkeley Bay Area and their friends" and notes that "[m]ost or all of these projects will be released to the public upon completion." Joly Decl. Exs. A-C; Carden Decl. Ex. 3. Below that introductory text is a listing of such projects. Each project is listed by name, which is then followed by a brief description and specification of the "Status" of each project. Id. The "Status" of each project is varied. For example, the screenshot from October 29, 2001, identifies the description of the project entitled "**Wardial demographic paper** [Dover]" indicates: "**Status**: Done results to be published soon." Joly Decl. Ex. A at 1. Another project, "**IR Conversion for QV-10** [Dover]," indicates: "**Status**: Done, write up coming soon." Id. at 2. With regard to Dynamic Firewall, the status as of December 1997 was listed as "basic log file monitoring *funtioning* [sic], now implementing core rulesets[.]" Am. Compl. ¶ 18 (italics added). Shipley allegedly updated the status of his project in December 2000 to read: "**Status**: *functioning . . . .*" Id. ¶ 32, 38 (italics added, ellipses in original); see also Joly Decl. Exs. A-C; Carden Decl. Ex. 3. Thus, it is beyond cavil that, when considered *in context*, the reference to "functioning" relates to the progress of the project, *not* that the software was functioning or operating *on the Website*. But even if it were, Juniper cites no authority to support the proposition that software running in the background of a website transmutes the website itself into an unpatented article.[2]

---

[2] The authority cited by Juniper is inapposite. The district court in Soverain Software LLC v. Amazon.com, Inc., 383 F. Supp. 904, 909 (E.D. Tex. 2005) merely acknowledged that a website could be "marked" for purposes of 35 U.S.C. § 287, which requires marking as a prerequisite to the recovery of damages. But the issue here is not whether the Website *could have* been marked. Rather, the salient question is whether, under 28 U.S.C. § 292(a), Shipley "marked" his Website in a manner to import that it was patented.

The above notwithstanding, assuming arguendo that the "marking" of Dynamic Firewall could be imputed to Shipley's Website generally, the facts alleged by Juniper fail to establish that Dynamic Firewall was "unpatented." To the contrary, the amended complaint expressly alleges that the PTO granted Shipley two patents on September 12, 2000 and October 16, 2001. Id. ¶¶ 31, 37. There is no allegation or indication that either patent has been declared invalid. Instead, Juniper merely contends that the marking of Dynamic Firewall was "false" because Shipley had lost the only embodiment of Dynamic Firewall as a result of a hard drive crash which occurred in 1999. Id. ¶ 28. However, even if that is true, that does not establish that Dynamic Firewall was unpatented.

The false marking statute is intended to protect the public from being misled into believing that an article is patented when, in fact, it is not. That is not what is alleged here. Rather, assuming that the facts alleged are true, the alleged deceit is that Shipley wrongly implied that Dynamic Firewall was a functioning component of his Website when that could not have been the case because the only remaining copy of Dynamic Firewall was lost in 1999. In other words, what Juniper is complaining about is not that the public was deceived by a false patent marking; but rather, that the public was misled into believing that his Website was running on software that no longer exists. Juniper has failed to cite and the Court has been unable to identify any authority to establish that such conduct is within the purview of section 292. Because no amendment can cure the infirmities inherent in Juniper's claim, the Court grants Shipley's motion and dismisses the amended complaint without leave to amend.[3]

### D. ADMINISTRATIVE MOTION FOR LEAVE TO FILE AMICUS BRIEF

PPFI seeks leave to submit an amicus brief in support of Juniper's opposition to Shipley's motion to dismiss. The Court has broad discretion in deciding whether to allow a

---

[3] Given that Juniper has failed to state a cognizable claim under section 292(a), the Court need not reach the parties' arguments regarding the statute of limitations. Nonetheless, the Court notes that Juniper's facts in support of equitable estoppel are inadequate because they rely on the same conduct that forms the basis of their false marking claim. See Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1052 (9th Cir. 2008), cert. denied sub nom., 129 S.Ct. 1997 (2009). As for equitable tolling, Juniper has not alleged any plausible facts demonstrating why it could not have learned of the facts earlier. See Federal Election Com'n v. Williams, 104 F.3d 237, 240-41 (9th Cir. 1996).

non-party to participate as an amicus curiae.  See Hoptowit v. Ray, 682 F.2d 1237, 1260 (9th Cir. 1982); In re Roxford Foods Litig., 790 F. Supp. 987, 997 (E.D. Cal. 1991).  In this case, the crux of PPFI's brief is that "each visit to an offending website creates a new, mismarked 'article' on the visitor's computer, thus constituting a separate 'offense'" under the false marking statute.  Moore Decl. Ex. A at 8.  Whether or not that is true is inapposite to the Court's ruling on the instant motion to dismiss.  Because Juniper has failed to establish *any* violation of the false marking statute, the Court need not reach the question of whether each visit to Shipley's website constitutes a new and separate marking violation.  The Court, in its discretion, therefore denies PPFI's administrative motion for leave to file an amicus brief.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendant Shipley's Motion to Dismiss Plaintiff's Amended (Docket 26) is GRANTED.  Since further amendment would be futile, the amended complaint is dismissed without leave to amend.

2. PPFI's Administrative Motion of Amicus Curiae Public Patent Foundation Inc. for Leave to File Brief in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss (Docket 32) is DENIED.

3. The Clerk shall close the file and terminate any pending matters.

IS IT SO ORDERED.

Dated:  March 16, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge